UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENERO S. OSBORNE,

                Petitioner,

v.                                CASE NO. 04-CV-74025-DT
                                HONORABLE ARTHUR J. TARNOW

TERRY SHERMAN,

                Respondent.
_____/

**OPINION AND ORDER DENYING HABEAS CORPUS PETITION**

Petitioner Jenero S. Osborne has filed a *pro se* application for the writ of habeas corpus

under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's murder and firearm

convictions. Because Petitioner's claims lack merit or are procedurally defaulted, the habeas

petition is denied.

**I. Background**

Petitioner was charged in Genesee County, Michigan with shooting two acquaintances.

The facts leading to the charges have been summarized by the Michigan Court of Appeals as

follows:

> On the morning of September 28, 2000, Genesee County dispatch received a 911
> call from one of the victims, Ant[on]io Bethel, indicating that he and another
> man, Michael McCrady, had been shot in their apartment. At one point in his 911
> call, Bethel named the shooter as "Jernero." McCrady was dead when emergency
> units arrived, and Bethel died while being transported to the hospital. Defendant
> was subsequently implicated in the killings by his cousin, Charles Thomas, who
> also knew the victims and
> allegedly assisted defendant in disposing of evidence after the shootings. Thomas
> accepted a plea bargain and was a key prosecution witness against defendant at
> trial.

*People v. Osborne*, No. 236066, at 1 (Mich. Ct. App. June 10, 2003).

*Osborne v. Sherman*, No. 04-74025

Petitioner did not testify.  He presented one witness, Jaleel Majeed, who testified that

Charles Thomas had discussed robbing and killing the victims in order to pay Majeed for drugs.

The jurors rejected Petitioner's theory that Charles Thomas committed the crimes, and on

June 8, 2001, they found Petitioner guilty of  two counts of first-degree murder, MICH. COMP.

LAWS § 750.316, and one count of possessing a firearm during the commission of a felony

(felony firearm), MICH. COMP. LAWS § 750.227b.  The trial court sentenced Petitioner to two

years in prison for the felony firearm conviction, followed by concurrent terms of life

imprisonment for each murder conviction.

Petitioner raised his habeas claims on direct review of his convictions.  The Michigan

Court of Appeals affirmed his convictions, and, on October 31, 2003, the Michigan Supreme

Court denied leave to appeal.  *See People v. Osborne*, 469 Mich. 952, 670 N.W.2d 673 (2003)

(table).

Petitioner filed his habeas corpus petition on November 23, 2004.  The grounds for relief

allege judicial and prosecutorial misconduct during *voir dire* and ineffective assistance of trial

counsel.  Respondent urges the Court in an answer to the habeas petition to deny relief.

## II.  Standard of Review

Section 2254(d) of Title 28, United States Code, imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –

2

*Osborne v. Sherman*, No. 04-74025

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual

determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application occurs" when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case."  *Id*. at 409.  A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.  Rather, that

application must also be unreasonable."  *Id*. at 411.

### III.  Discussion

#### A.  Comments and Questions during *Voir Dire*

Petitioner alleges that the trial court's and the prosecutor's comments during *voir dire*

influenced the jury to accept Charles Thomas' testimony without reservation. Thomas was a key

prosecution witness, who testified that he helped Petitioner cover up evidence of the crimes after

Petitioner admitted to him that he had killed two men.  Petitioner asserts that the trial court and

3

*Osborne v. Sherman*, No. 04-74025

the prosecutor, by their questions and conduct, instructed the prospective jurors that Thomas should be judged as any other witness and that Thomas' testimony could not be rejected.  In so doing, alleges Petitioner, the trial court and the prosecutor mislead the prospective jurors and bolstered Thomas' credibility.        Petitioner contends that a proper statement of the law is that accomplice testimony must be treated with greater care and caution than that of other witnesses and that accomplices can be disbelieved because of their motivations.  Petitioner claims that the trial court's and the prosecutor's misleading of the jurors was reinforced when the court excused a juror for cause because she stated that the plea agreement would make it difficult for her to listen to what the accomplice had to say.

### 1.  Procedural Default

Respondent argues that Petitioner's claim is procedurally defaulted.  A procedural default is "a critical failure to comply with state procedural law. . . ."  *Trest v. Cain*, 522 U.S. 87, 89 (1997).  Federal courts may not consider procedurally defaulted claims unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The state procedural rule in question is Michigan's contemporaneous-objection rule, which requires defendants to make a timely and specific objection at trial in order to preserve the claim for appellate review.  *See People v. Carines*, 460 Mich. 750, 761-64; 597 N.W.2d 130, 137-38 (1999); *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994).  "[T]he

4

*Osborne v. Sherman*, No. 04-74025

contemporaneous-objection rule has been lauded as few other procedural requirements have been."  *Scott v. Mitchell*, 209 F.3d 854, 870 (6th Cir. 2000).

Petitioner violated Michigan's contemporaneous-objection rule by not objecting to the prosecutor's and the trial court's comments during *voir dire*. The Michigan Court of Appeals enforced the procedural rule by reviewing Petitioner's claim for "plain error" and by stating that Petitioner had failed to preserve his claim for appellate review by raising it before the trial court.

The contemporaneous objection rule was an adequate and independent state ground for denying relief because it was firmly established and regularly followed before Petitioner's trial. Therefore, in order for this Court to consider the substantive merits of Petitioner's procedurally defaulted claims, he must establish "cause and prejudice" or a "miscarriage of justice."

## 2.  "Cause"

Petitioner alleges that his trial attorney's failure to object to the trial court's and the prosecutor's questions during *voir dire* constituted ineffective assistance.  "Constitutionally '[i]neffective assistance of counsel . . . is cause for a procedural default.'"  *Joseph v. Coyle*, __ F.3d __, __, Nos. 05-3111/3113, 2006 WL 3250935, at *14 (6th Cir. Nov. 9, 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  But to prove ineffective assistance of counsel under the Sixth Amendment, the petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).    Criminal defense lawyers are "given broad discretion in making decisions during *voir dire*," *Miller v. Francis*, 269 F.3d 609, 620 (6th Cir. 2001), and their

5

*Osborne v. Sherman*, No. 04-74025

"actions during *voir dire* are presumed to be matters of trial strategy." *Id.* at 615. An attorney's

failure to make a contemporaneous objection to trial misconduct

> constitutes defective performance when that failure is due to clear inexperience or lack of knowledge of controlling law, rather than reasonable trial strategy. *See, e.g., Gravely v. Mills*, 87 F.3d 779, 785-86 (6th Cir. 1996); *Rachel v. Bordenkircher*, 590 F.2d 200, 204 (6th Cir. 1978).

> [E]ven if counsel's performance is deemed deficient, a defendant must show that those deficiencies were prejudicial to the defense. *See Strickland*, 466 U.S. at 692. To make this showing, the defendant must demonstrate that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Washington v. Hofbauer,* 228 F.3d 689, 702 (6th Cir. 2000).

The subject of accomplice testimony was first raised by the prosecutor, who informed the

prospective jurors that they would hear testimony from an individual who received a plea

bargain in exchange for his testimony against Petitioner. The prosecutor then explained that the

trial judge would be instructing the jurors that they should give an accomplice's testimony

particular scrutiny.

At one point, the trial court and the prosecutor asked whether the prospective jurors

would be able to judge the testimony of an accomplice the same as they would another witness'

testimony. For the most part, however, the prosecutor and the trial court defined the issue as

whether the prospective jurors could be fair despite the plea agreement or whether the jurors

could consider an accomplice's testimony when determining whether the prosecutor had proved

the elements of the offense.

Rather than objecting to the trial court's and the prosecutor's questions, defense counsel

pointed out that the jurors should consider the plea bargain when judging the witness' credibility.

6

*Osborne v. Sherman*, No. 04-74025

This approach was not the equivalent of an objection.  However, defense counsel made an important point:  that the plea bargain might be the basis for the accomplice's testimony and the jurors should not assume that the accomplice was a credible witness.  Even if the failure to object were deficient performance, relief would not be required, because there was no prejudice.

### 3.  Prejudice

Even if defense counsel's performance were deficient, Petitioner has not shown that his attorney's performance prejudiced the defense.  The jury was apprised of the full extent of the prosecutor's plea bargain with Charles Thomas and what Thomas gained by testifying against Petitioner.

In addition, the trial court instructed the jurors after *voir dire* and at the close of the case that they must decide which witnesses to believe and how important the witnesses' testimony was.  The trial court stated that the jurors could reject some or all of what a witness said.  When explaining how to determine the credibility of witnesses, the trial court mentioned such factors as whether any promises had been made to affect how the witness testified and whether the witness had any special reason to tell the truth or to lie.

In its final charge to the jurors, the trial court advised the jurors that, if they determined Charles Thomas was an accomplice, they should examine his testimony closely, carefully, and more cautiously than that of an ordinary witness.  The court also charged the jurors to think about whether the accomplice testimony was supported by other evidence and was falsely slanted to make Petitioner seem guilty.  The court urged the jurors to consider whether Thomas was offered a reward or promised anything that might lead him to give false testimony, whether

*Osborne v. Sherman*, No. 04-74025

he was promised a lighter sentence or allowed to plead guilty to a less serious charge, and

whether these factors could have influenced his testimony.

The court instructed the jurors to consider Thomas' testimony closely and carefully for

an additional reason:  the fact that he may have been addicted to cocaine.  The court enumerated

factors to consider when deciding whether to believe a witness who was addicted to drugs.  The

court stated that, in general, the jurors should consider an addicted witness's testimony more

cautiously than they would the testimony of an ordinary witness.

Jurors generally are presumed to follow their instructions.  *Richardson v. Marsh*, 481

U.S. 200, 211 (1987).  Given the trial court's thorough instructions on how to evaluate Charles

Thomas' testimony, Petitioner's jurors could not have been convinced to accept Thomas'

testimony without reservation.  Furthermore, to the extent that the prosecutor and the trial court

misstated the law on accomplice testimony during *voir dire*, the jurors likely did not treat those

comments as binding statements of the law.  Any possible confusion caused by the comments

during *voir dire* was alleviated by the consistent and correct instructions subsequently given to

the jury.  *United States v. Hynes*, __ F.3d __, __, No. 05-2036, 2006 WL 3196437, at *3 (6th Cir.

Nov. 7, 2006).

There is not a reasonable probability that, but for defense counsel's failure to object

during *voir dire*, the result of the proceedings would have been different. Therefore, the failure to

object to questions and conduct during *voir dire* did not prejudice the defense and did not

amount to ineffective assistance.  Petitioner has not met the *Strickland* standard and, therefore,

he has failed to show "cause" to excuse the procedural bar that precludes habeas review of his

*Osborne v. Sherman*, No. 04-74025

prosecutorial-misconduct claims. *Hinkle v. Randle*, 271 F.3d 239, 246 (6th Cir. 2001). The

Court need not determine whether Petitioner has demonstrated the requisite prejudice because he

has not shown "cause" to excuse his procedural default. *Smith v. Murray*, 477 U.S. 527, 533

(1986); *Willis*, 351 F.3d at 746.

### 4. Miscarriage of Justice

The remaining question is whether the Court's failure to consider the substantive merits

of Petitioner's defaulted claims will result in a miscarriage of justice. This narrow exception

requires the habeas applicant to demonstrate that the alleged constitutional error has probably

resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v.

Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496.          Petitioner has not supported

his claims with any new evidence of actual innocence. Nor has he established the testimony at

trial, absent their errors, was insufficient to establish his guilt. Accordingly, a miscarriage of

justice will not occur as a result of the Court's decision not to adjudicate the substantive merits

of Petitioner's procedurally defaulted claim.

### B. Trial Counsel

Petitioner's remaining claims allege ineffective assistance of trial counsel.          The

Supreme Court's decision in *Strickland* "qualifies as 'clearly established Federal law'" for

purposes of evaluating ineffective-assistance-of-counsel claims. *Williams*, 529 U.S. at 391.

Pursuant to *Strickland*, Petitioner must demonstrate that his attorney's performance was deficient

and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

Petitioner "must show that counsel's representation fell below an objective standard of

*Osborne v. Sherman*, No. 04-74025

reasonableness." *Id*. at 688. He also must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. Because of the difficulties inherent in evaluating defense counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

### 1. The 911 tape

Petitioner alleges that his attorney was ineffective for stipulating to the admission of a taped telephone call from one of the victims to a 911 operator. The prosecutor played the taped telephone call to the jury at the beginning of his opening statement and at the close of his rebuttal argument. The prosecutor also noted that the caller had said "Jernero" was the shooter, and he argued that a dying man would not lie about who killed him and his friend.

Petitioner maintains that the taped call was inadmissible hearsay because there was no independent verification that the caller was Antonio Bethel and because the prosecutor did not establish that the caller was conscious of impending death. Although hearsay generally is not admissible in state court, Mich. R. Evid. 802, an exception to this rule exists if the declarant is unavailable and made a statement "while believing that the declarant's death was imminent,

10

*Osborne v. Sherman*, No. 04-74025

concerning the cause or circumstances of what the declarant believed to be impending death."
Mich. R. Evid. 804(b)(2).

Here, the caller identified himself as Antonio and gave his street address. The jurors
learned from independent testimony that Antonio Bethel lived at that location and that Antonio
had informed a police officer who responded to the scene that his name was Antonio. During the
course of the 911 call, the caller said: "I think I'm gonna die;" "Hurry up . . . . I fixin' to die;"
and "Hurry up . . . ohh . . . . I'm dyin. . . ." These declarations and the other evidence established
the caller's identity by independent verification and the caller's belief that death was imminent.
Therefore, the tape of the 911 telephone call was admissible under the exception for dying
declarations. Defense counsel was not ineffective for stipulating to admission of the tape. This
conclusion is supported by the additional fact that defense counsel used the tape to show that,
although the caller identified "Jernero" as the shooter, he also stated at subsequent points in the
conversation that he did not know the shooter and did not know the shooter's name.

### 2.  Failure to Request a Walker Hearing

Petitioner alleges next that his trial attorney should have moved for a hearing to
determine whether his comment to the police was voluntary under *Miranda v. Arizona*, 384 U.S.
436 (1966).

The statement in question occurred after Petitioner was arrested and taken to the police
station. He asked a detective why he had been taken to the police station. The detective
responded that Petitioner had been arrested on a warrant for the murder of Michael McCrady and
Antonio Bethel. Petitioner then replied that he did not know either man. Defense counsel

11

*Osborne v. Sherman*, No. 04-74025

moved *in limine* to prevent the prosecutor from using this comment.  He argued that the comment was inadmissible hearsay.

The prosecutor maintained that, although Petitioner was under arrest at the time, his comment was not the product of interrogation.  The trial court agreed with the prosecutor and denied defense counsel's motion.  The prosecutor subsequently mentioned Petitioner's comment to the police in his opening statement.  He also elicited the comment through the testimony of the detective to whom Petitioner had directed the comment.

Petitioner's comment to the detective was volunteered; it was not the product of questioning initiated by the detective.  "Any statement given freely and voluntarily without any compelling influences is . . . admissible in evidence" and is "not barred by the Fifth Amendment," nor affected by the Supreme Court's holding in *Miranda*.  *Miranda*, 384 U.S. at 478.  Furthermore, the comment was ambiguous.  Defense counsel was not ineffective for failing to request a hearing on whether the statement was voluntary and admissible.

### 3.  Failure to Investigate

Petitioner's final claim is that his attorney was ineffective for failing to conduct reasonable investigations into the evidence and for failing to call two alibi witnesses.  *Strickland* requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691.

"A number of recent cases have emphasized that defense attorneys have a constitutional duty to conduct adequate factual investigations."  *Joseph*, 2006 WL 3250935, at *15 (citing *Rompilla v. Beard*, 545 U.S. 374 (2005) and *Wiggins v. Smith*, 539 U.S. 510 (2003)).  "American Bar

12

*Osborne v. Sherman*, No. 04-74025

Association standards . . . also mandate counsel's duty to investigate all leads relevant to the merits of the case." *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987).

The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005). Inattention or negligence, as opposed to reasoned strategic judgment, is inexcusable. *Wiggins*, 539 U.S. at 526; *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

### a. Foot Impressions

Petitioner states that his attorney should have secured photographs of the bloody footwear impressions left at the crime scene and compared them to his (Petitioner's) and Charles Thomas' feet. Petitioner claims that, if the shoe impressions were significantly larger or smaller than his shoe size, it would have demonstrated that he was not the killer, and if the shoe impressions matched Charles Thomas' shoe size, it was proof that Thomas was the killer.

Witnesses testified that there were two different types of bloody footprints at the crime scene. One set matched a shoe belonging to a victim. The other type of footprint was labeled the suspect's shoe impression, because it did not match any shoes on the premises. The State's expert witness in serology and footwear impressions testified that (1) the police did not provide her with any footwear to compare to the bloody footwear impressions and (2) she was unable to determine the brand of the suspect's shoe when she tried to compare the suspect's footwear impression to brand names found on a computerized database.

13

*Osborne v. Sherman*, No. 04-74025

Because defense counsel apparently had only a photograph with which to work, it was objectively reasonable not to waste time trying to compare Petitioner's shoe size with the bloody imprint in the photograph. Petitioner has not alleged a basis for concluding that the footwear impressions matched Charles Thomas' shoe size. Even if the footwear impressions proved incompatible with Petitioner's shoe size, his fingerprints were found in three places at the crime scene, including the cold air return in the basement where one of the victims was found. The alleged failure to investigate Petitioner's and Charles Thomas's footwear did not constitute deficient performance and did not prejudice Petitioner.

### b. Credit Card Evidence

Petitioner asserts that his attorney should have investigated the account activity for the victim's credit cards after the murders. Petitioner contends that an investigation might have revealed that he was not involved in fraudulent use of the credit cards or that the victim's credit cards were not improperly used.

Charles Thomas testified that Petitioner and two other men went on a shopping spree with him after the murder. According to Thomas, he charged gas and hundreds of dollars of merchandise using credit cards from one of the deceased victims.

Defense counsel had good reason to believe that an investigation into use of the victim's credit cards would have been a waste of time. Thomas admitted that he signed the receipts. Even if defense counsel could have shown that Petitioner was not involved in fraudulent credit card activity, this evidence was not indicative of Petitioner's guilt or innocence of the double

14

*Osborne v. Sherman*, No. 04-74025

murder.  Therefore, defense counsel was not ineffective for failing to investigate the victim's credit card activity following the murders.

### c.  Alibi Witnesses

Petitioner alleges that his attorney should have investigated and called Freddie Thomas, Jr., and Kristie Patilla as alibi witnesses.  Petitioner has not alleged what Freddie Thomas' testimony would have been.  And although he claims that he attached Mr. Thomas' affidavit to his motion to remand in state court, the record before the Court indicates that only Petitioner's affidavit and Ms. Patilla's statement were attached to the motion to remand.  Petitioner has failed to "make some showing of what evidence counsel should have pursued [in connection with Freddie Thomas] and how such evidence would have been material."  *Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002).

As for Kristie Patilla, her written statement is attached to the habeas petition.  It  contains typewritten sentences and handwritten comments.  Ms. Patilla indicates in her statement that she was Petitioner's girlfriend at the time of the murders.  Her typewritten sentences state that Petitioner spent the entire evening of September 27, 2000, and the morning of September 28, 2000, at her apartment.[1]  Next to this typewritten sentence, Ms. Patilla wrote, "I can't remember. I know he did not leave all night."  The next typewritten statement reads, "We parted company at approximately noon on September 28, 2000."  Ms. Patilla wrote next to this statement, "I can't remember what time but I dropped him off at home."

---

[1]  The prosecution estimated that the crimes occurred at 8:40 a.m. on September 28, 2000.

*Osborne v. Sherman*, No. 04-74025

Ms. Patilla's uncertainty about the time in question and her close relationship to Petitioner would have made her alibi testimony appear weak and biased. Her testimony would have been further undermined by the testimony of Charles Thomas and Natwana Toles, both of whom testified that Petitioner came to their home on the morning of September 28, 2000. For all the foregoing reasons, defense counsel was not ineffective for failing to pursue an alibi defense.

### 4.  Summary

The Michigan Court of Appeals adjudicated Petitioner's claims of ineffectiveness and rejected them on the merits. The state court's decision was a reasonable application of *Strickland*, because Petitioner has not shown that defense counsel's performance was deficient. Even if it were deficient, there is not a reasonable probability that the result of the trial could have been different but for defense counsel's alleged failure to investigate.

### IV.  Conclusion

Petitioner's first claim is procedurally defaulted, and the state court's adjudication of Petitioner's ineffective-assistance-of-counsel claims did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, Petitioner is not entitled to the writ of habeas corpus. His application for the writ is DENIED.

> s/Arthur J. Tarnow
> Arthur J. Tarnow
> United States District Judge

Dated:  February 28, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 28, 2007, by electronic and/or ordinary mail.

> s/Catherine A. Pickles
> Judicial Secretary

16